Bruce C. DAVIDSON and Marie C. Bill, Plaintiffs–Appellants,

v.

COMMUNITY CONSOLIDATED SCHOOL DISTRICT 181, an Illinois quasi-municipal corporation, Arlene Berger and Unknown Members Of The Hinsdale–Clarendon Hills Classroom Teacher Association, Defendants–Appellees.

Nos. 97–1558, 97–1807.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 24, 1997.

Decided Nov. 12, 1997.

John R. Wimmer (argued), Downers Grove, IL, for Plaintiffs–Appellants.

Lisa A. Lopatka, Erika Dillon (argued), Franczek, Sullivan, Mann, Crement, Hein &

Relias, Chicago, IL, Wesley Kennedy, Michael H. Slutsky (argued), Allison, Slutsky & Kennedy, Chicago, IL, for Defendants–Appellees in No. 97–1558.

Lisa A. Lopatka, Erika Dillon (argued), Franczek, Sullivan, Mann, Crement, Hein & Relias, Chicago, IL, Michael H. Slutsky (argued), Allison, Slutsky & Kennedy, Chicago, IL, for Defendants–Appellees in No. 97–1807.

Before RIPPLE, MANION and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

Bruce C. Davidson and Marie C. Bill, candidates for election to the school board of the defendant Community Consolidated School District 181 ("the District"), appeal the district court's grant of summary judgment. In their complaint, Mr. Davidson and Ms. Bill ("the candidates") alleged that the District violated their First and Fourteenth Amendment rights when it permitted the Union representing the District's teachers to use the District's internal mail system to communicate with the teachers about the school board election. The candidates were not permitted such access.[1] For the reasons set forth in the following opinion, we affirm the judgment of the district court.

## I

## BACKGROUND

### A.

The candidates were among six candidates competing for four vacancies on the District 181 school board. Arlene Berger is president of the Hinsdale–Clarendon Hills Classroom Teacher Association ("Union"), the exclusive bargaining representative of the teachers in the District. On October 30, 1995, Ms. Berger, acting in her capacity as union president, prepared two memoranda endorsing three candidates for the upcoming school board election. One memorandum was addressed to union members and the other to nonunion staff. Using school paper and copying equipment, Ms. Berger made 215 copies of the union fliers and 85 copies of the staff fliers. Ms. Berger personally handed out the fliers at the school where she taught and mailed the rest to union representatives at other district schools. She used the District's internal mail system. Once the union representatives received the fliers, they personally distributed them at their own schools.

The candidates in this lawsuit were not among those endorsed by the Union. When Mr. Davidson learned of the union endorsement mailing, he complained to District Superintendent David Hendrix that use of the internal mail system involved an illegal use of district resources for political purposes. Hendrix brushed off Davidson's complaint and suggested, in jest, that Mr. Davidson could use the mail system to distribute his campaign literature.[2] Mr. Davidson won a seat on the school board, but Ms. Bill did not. After the election, Ms. Berger asked the District to prepare an invoice in connection with the distribution of the endorsement fliers. The District then mailed an invoice for $21.06 to the Union on November 10. The Union paid it on November 21.[3]

---

1. In their complaint, the candidates also alleged that Ms. Berger and other members of the Union had conspired to deprive the plaintiffs of their civil rights in violation of 42 U.S.C. § 1985. This count was dismissed by the district court for failure to state a claim. See Fed.R.Civ.P. 12(b)(6). The dismissal of this count is not before us in this appeal. Count III was a related state claim which was dismissed without prejudice by the district court pursuant to 28 U.S.C. § 1367(c)(3). Therefore, this appeal concerns solely the district court's grant of summary judgment on Count I of the complaint.

2. Both parties agree that Hendrix did not intend this offer to be taken seriously and that he had no intention of actually allowing Davidson to use the internal mail system.

3. The only disputed factual issue in this lawsuit is whether the Union's payment of $21.06 was adequate to reimburse the District for its costs in connection with the distribution of the endorsement fliers. The district court determined that this dispute was irrelevant to its disposition of the plaintiffs' First and Fourteenth Amendment claims. See Davidson v. Community Consol. Sch. Dist. 181, No. 96 C 3394, 1997 WL 135888, at *4 (N.D.Ill. Feb. 11, 1997). As our discussion in this opinion makes clear, we do not believe that the existence of this dispute precludes summary judgment.

The focus of this lawsuit is the District's internal mail system. The District employs a courier who transports mail among the various schools in the District by means of a van owned by the District and used strictly for district business. The District's internal mail system is not available for unrestricted use by the public at large. The District also has an unwritten policy of allowing unrestricted use of the system to district employees, parent-teacher organizations and the Union. The District does not review the content of the mailings by these groups. In addition, the District has a formal policy which permits the superintendent, at his discretion, to allow any person to use the mail system to circulate brochures "publicizing events of interest to children." This latter policy is not at issue in this case.

## B.

The district court held that this case is controlled by the Supreme Court's decision in *Perry Education Association v. Perry Local Educators' Association,* 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). *See Davidson v. Community Consol. Sch. Dist.* 181, No. 96 C 3394, 1997 WL 135888, at *3 (N.D.Ill. Feb. 11, 1997). Relying on *Perry,* the court held that the school district's internal mail system was not a public forum and, consequently, the District may restrict access to its internal mail system as long as the restrictions are viewpoint neutral and " 'reasonable in light of the purpose which the forum at issue serves.' " *Id.* (quoting *Perry,* 460 U.S. at 49, 103 S.Ct. at 957).

The district court determined that District 181's regulation of its internal mail system was viewpoint neutral because the District's regulations, like those in *Perry,* distinguish classes of speakers based on their identity rather than on their point of view. *Id.* Next, the district court held that the District's internal mail policy was reasonable in light of the purposes it serves. *Id.* at *4. In reaching this determination, the district court noted that the Supreme Court held in *Perry* that it was reasonable for an elected teachers' union to use the internal mail system to " 'express its independent view on matters within the scope of its representational duties.' " *Id.* at

*3 (quoting *Perry,* 460 U.S. at 51 n. 10, 103 S.Ct. at 958 n. 10). Thus, the district court concluded that the use in this case was reasonable because selecting school board members that would respond to the concerns of the teachers was a matter clearly within the scope of the Union's representational duties. *Id.* at *4.

The district court also held that the internal mail policy did not violate plaintiffs' Fourteenth Amendment right to the equal protection of the laws. *Id.* at *5. Rather, the district court held that the identity-based policy of differential access is rationally related to the goal of allowing the Union to perform its obligations as exclusive bargaining representative. *Id.*

## II

## DISCUSSION

### A.

The candidates renew their contention that their First Amendment rights were violated by the District's policy of allowing the Union to use its internal mail system to distribute fliers endorsing school board candidates while simultaneously denying access to the mail system to those candidates not endorsed by the Union. The candidates submit that the District should not have permitted the use of its equipment and facilities to favor the election of certain candidates while denying access to other candidates. They argue that it is undisputed that public resources were used to prepare and distribute, to both teachers' union members and nonunion district staff, campaign fliers supporting the plaintiffs' union-endorsed opponents in the school board election. In their view, *Perry* simply is not applicable here because, in that case, the preferential access of the bargaining agent to the school district's internal mail system continued only while its status as exclusive representative was insulated from challenge. When a representation election was in progress, however, both unions were afforded equal access to communication facilities. *Perry,* 460 U.S. at 41, 103 S.Ct. at 952–53. Thus, in the candidates' view, *Perry* does not sanction a school district's allowing

a teachers' union to use the district's publicly-owned internal mail system to endorse candidates in an election while denying the same privilege to the opponents of the union-endorsed candidates. The candidates also point out that, unlike the competing union in *Perry*, they are not necessarily asking the District to end its policy of selective access; they would be content with a policy that simply prohibits the Union (and everyone else for that matter) from using the mail system for political purposes.

The candidates further submit that the constitutional violation was not cured when the District was reimbursed by the Union. Reimbursement of an illegal use of public funds or resources does not render the improper use legal. Even if there was reimbursement after the election, the Union already would have been given an unfair advantage in the election. They also contend that there are genuine issues of fact as to whether the District was fully reimbursed by the Union because the Union did not reimburse the District for fuel used and depreciation on the van driven by the mail courier, a portion of the cost of installing and maintaining the District's mail system, and the time it took union representatives to stuff the fliers in employee mailboxes.

### B.

■ We believe that the district court's perspective on this matter is the appropriate constitutional characterization. In *Perry*, the Supreme Court held that a public school district's internal mail system is a nonpublic forum because the "normal and intended function" of such a system is to facilitate internal communication. *Perry*, 460 U.S. at 47, 103 S.Ct. at 956; *see also Grossbaum v. Indianapolis–Marion County Bldg. Auth.*, 63 F.3d 581, 587 (7th Cir.1995) (discussing the appropriate methodology for the restriction of communication in a nonpublic forum). The appropriate focus therefore is not on the content of the Union's communication

but on whether the District was justified in allowing that entity to use its internal system of message distribution. In that regard, *Perry* requires that we first inquire whether the access policy of the District was viewpoint neutral. *See* 460 U.S. at 46, 103 S.Ct. at 955–56. In permitting the Union to use the mail system, there is "no indication that the [s]chool [b]oard intended to discourage one viewpoint and advance another." *Id.* at 49, 103 S.Ct. at 957. Here, the record makes clear that the Union was permitted to use the mail system because of its status as the exclusive bargaining agent of the teachers within the school system. The criterion for admission to the system was the status of the Union, not the viewpoint of its communication.

■ *Perry* also requires that the regulation of the internal mail system be reasonable in light of its purpose. *Id. Perry* also makes it clear that it is reasonable for a school district to permit the union representing its teachers to communicate through the mail system with its members and other employees in the school district. *Id.* at 50–52, 103 S.Ct. at 958–59. As the Supreme Court noted, when a union becomes the bargaining representative for the teachers, it "assume[s] an official position in the operational structure of the District's schools." *Id.* at 50 n. 9, 103 S.Ct. at 957 n. 9. Affording such an entity the means to communicate with others in the school system is rationally related to the need for efficient school district governance.

■ It is important to note that the record makes clear that the District in no way sponsored or endorsed any candidate in the school board election. Nor did it permit any candidate—the plaintiffs or anyone who opposed them—to use the mail system. It simply permitted the recognized bargaining agent to use the system for its own internal communication.[4] Our focus must be on whom the District permitted to use the sys-

---

4. Because we believe that the District's decision to limit the use of the internal mail system to those involved in the governance of the District, including the Union, is content neutral and ra-

tionally related to the purpose of the mail system, we cannot accept the candidates' contention that their exclusion violates the Equal Protection Clause.

tem, not on the message that the user sent through that system.[5]

Nor do we believe that the candidates can prevail on the issue of reimbursement. First, the record evidence is unequivocal that the District was fully reimbursed by the Union for any expenses in connection with the fliers. As we have noted, the District did not directly support any candidate for the school board. It merely permitted the Union to use its internal mail system for communications connected with its role in representing the teachers of the District. It does not violate the First Amendment for the District to use government funds to facilitate communication of those involved directly in the governance of the District but to decline to give the same support to other communication. *Cf. Rust v. Sullivan,* 500 U.S. 173, 193, 111 S.Ct. 1759, 1772, 114 L.Ed.2d 233 (1991) ("The Government can, without violating the Constitution, selectively fund a program to encourage certain activities it believes to be in the public interest, without at the same time funding an alternative program which seeks to deal with the problem in another way. In so doing, the Government has not discriminated on the basis of viewpoint; it has merely chosen to fund one activity to the exclusion of the other.").

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.

---

**5.** We therefore have no occasion to determine whether the Union's message can be characterized as an appropriate exercise of its bargaining function. *See Lehnert v. Ferris Faculty Ass'n,* 500 U.S. 507, 520, 111 S.Ct. 1950, 1959–60, 114 L.Ed.2d 572 (1991) (opinion of Blackmun, J.);

*Chicago Teachers Union, Local No. 1, AFT, AFL–CIO v. Hudson,* 475 U.S. 292, 302–06, 106 S.Ct. 1066, 1073–76, 89 L.Ed.2d 232 (1986); *Abood v. Detroit Bd. of Educ.,* 431 U.S. 209, 237, 97 S.Ct. 1782, 1800–01, 52 L.Ed.2d 261 (1977).